IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **NENA BROCK, individually and on behalf of others similarly situated,** <br><br> **Plaintiff,** <br><br> **vs.** <br><br> **THE RIGHT SOLUTIONS, L.L.P.** <br><br> **Defendant.** | **CIVIL ACTION NO. 4:18-cv-300** <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT**

Nena Brock ("Plaintiff"), individually and on behalf of others similarly situated, files this Original Collective Action Complaint against The Right Solutions, L.L.P. ("Defendant"), showing as follows:

**SUMMARY**

1. Defendant is in the business of staffing medical facilities throughout Texas with nurses. The nurses regularly work far more than 40 hours in a work week. However, Defendant classifies all of its hourly paid nurses as "independent contractors," and thus does not pay them overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Defendant's classification of the nurses is wrong; they are employees under the FLSA, not independent contractors. Accordingly, Defendant owes the nurses overtime pay, liquidated damages and all other remedies available under the FLSA.

## **THE PARTIES & JURISDICTION**

2. Plaintiff Nena Brock is an individual residing in Harris County, Texas. She is currently employed by Defendant as an hourly paid Registered Nurse and has worked for Defendant from on or about July 2002 to the present. Plaintiff's hourly rate is $41 per hour. Plaintiff regularly works 72 hours per week, with some variance. Plaintiff has standing to file this lawsuit.  Her notice of consent is attached as Exhibit 1.

3. The "Class Members" are "all current and former hourly paid nurses classified as independent contractors who performed work for Defendant at any time during the three-year period preceding the date the Court certifies this case as a Section 216(b) collective action to the present."  Like the named Plaintiff, these persons were and are engaged in interstate commerce in performing their duties for Defendant. All of the "Class Members" are similarly situated to Plaintiff and to one another, within the meaning of section 216(b) of the FLSA.

4. Defendant The Right Solutions, L.L.P. is a domestic limited liability partnership doing business in Texas for profit. Defendant may be served with process through its owner Dely Cruz at 9545 Katy Freeway, Ste. 335, Houston, Texas 77024.

5. Defendant has engaged in commerce or the production of goods for commerce at all material times, including in 2015, 2016, 2017, and 2018. Defendant continues at this time to engage in commerce or the production of goods for commerce.

6. Defendant had annual revenues in excess of $500,000 at all material times, and has had annual revenues in excess of $500,000 in 2015, 2016, 2017, and 2018.

7. Defendant has, at all material times, acted, directly or indirectly, in the interest of an employer with respect to Plaintiff and the Class Members.

8. Defendant has, at all material times, been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

9. Defendant has, at all materials times, each been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

10. Defendant has, at all material times, been an enterprises engaged in commerce or in the production of goods for commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that Defendant has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and Defendant has had and continues to have annual gross volume of sales made or business done in excess of $500,000, exclusive of excise taxes at the retail level which are separately stated.

11. At all material times, Defendant has been an enterprise in commerce within the meaning of Section 203(s)(1)(B) of the FLSA because Defendant is engaged in the operation of an institution primarily engaged in the care of the sick and the aged. Because Defendant operates an institution primarily engaged in the care of the sick and elderly it is per se an "enterprise in commerce" pursuant to Section 203(s)(1)(B).

12. The Court has personal jurisdiction over Defendant based on general and specific jurisdiction. For years, Defendant has done business in the state of Texas, and it continues to do business in the state of Texas.

13. The Court has subject matter jurisdiction over this case based on federal question jurisdiction. There is federal question jurisdiction because Plaintiff and the putative Class Members all base their claims in this case on the FLSA, a federal law.

**FACTUAL BACKGROUND IN LIGHT OF THE ECONOMIC REALITIES TEST FOR EMPLOYEE STATUS**

14. Defendant is in the business of staffing medical facilities throughout Texas with nurses. Defendant operates from Houston, Texas.

15. Defendant employs hourly paid nurses to provide medical care at various medical operations throughout the State of Texas.

16. Defendant classifies its hourly paid nurses as independent contractors.

17. However, Defendant does not permit its nurses to work for its competitors.

18. Defendant does not permit its nurses to hire their own employees or subcontract work.

19. Defendant is the sole communication liaison with hospitals and other medical facilities looking to hire nurses.

20. Defendant assigns work locations and shifts for its nurses. It has sole discretion as to which nurse works where and when.

21. Defendant does not permit its nurses to decline job assignments.

22. Defendant tracks the hours worked by its nurses and pays them on an hourly basis.

23. Many of Defendant's nurses have worked for Defendant for extended periods of time. For example, the named Plaintiff has worked for Defendant for approximately sixteen (16) years.

24. Over the past three years, Defendant has had more than 100 nurses perform work for its customers. Defendant sent all of them 1099s to reflect the compensation that they were paid during 2015, 2016, and 2017. Defendant intends to send them all 1099s to reflect the compensation that they were, or will be, paid during 2018.

25. The hourly paid nurses regularly work far more than 40 hours in a work week. Defendant knows that. However, Defendant classifies all the nurses as "independent contractors," and thus does not pay them overtime under the FLSA, 29 U.S.C. § 201 *et seq*. Defendant's classification of the nurses is wrong; they are employees under the FLSA, not independent

contractors. As observed by the Fifth Circuit, the FLSA definitions of "employee" and "employer" are broad and intended to encompass "some parties who might not qualify as such under a strict application of traditional agency law principles." *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326, (1992)). And although Plaintiff and the other Members of the Class were employed pursuant to an "Independent Contractor Agreement" explicitly designating them all as independent contractors rather than as employees, the Agreement's terms are not determinative. *See Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1315 (5th Cir. 1976) ("[n]either contractual recitations nor subjective intent" can mandate a finding of employee or independent contract status.).

26.   Instead, in order to determine whether an individual is an employee or an independent contractor, the relevant inquiry is "whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Hopkins*, 545 F.3d at 343. In making that determination, the Court should consider five non-exhaustive factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *Hopkins*, 545 F.3d at 343. No factor is sufficient or dispositive in and of itself; instead each should be considered in the larger context of the ultimate inquiry. *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043–44 (5th Cir. 1987). "The determination of whether an individual is an employee or independent contractor is highly dependent on the particular situation presented." *Thibault v. Bellsouth Telecomms., Inc.*, 612 F.3d 843, 848 (5th Cir. 2010). In this case, the facts demonstrate that Plaintiff and the Members of the Class are employees, not independent contractors.

27. **Degree of Control Exercised by Defendant**. In determining the degree of control exercised by the purported employer, the court should look to whether an individual exerts such control over a meaningful part of the business that he stands as a separate economic entity, or whether the alleged employer still controls the meaningful economic aspects of the business. *See Hopkins*, 545 F.3d at 343. The autonomy of the individual must be meaningful, as "the lack of supervision over minor regular tasks cannot be bootstrapped into an appearance of real independence." *Id*. (quoting *Mr. W. Fireworks*, 814 F.2d at 1049). Here, Defendant controlled the meaningful economic aspects of the business:

   a. Plaintiff and Class Members did not go find their own jobs each day. Rather, Defendant contacted the Plaintiff and the Class Members with the jobs they were to handle each day, and they ran them as instructed.

   b. Plaintiff and the Members of the Class did not have the option to refuse the jobs they were given by Defendant. In fact, Defendant would deny future work to its nurses if they declined to do certain jobs. *Compare Herman v. Express Sixty–Minutes Delivery Serv., Inc.*, 161 F.3d 299, 303 (5th Cir. 1998) (finding independent contractor status where drivers could reject deliveries "**without retaliation**") (emphasis added).

   c. Plaintiff and the Class Members were required to perform their services to Defendant's satisfaction, and if Defendant was not satisfied with their services, Plaintiff and the Members of the Class were reprimanded or terminated.

   d. Plaintiff and Class Members were not permitted to solicit Defendant's customers or compete with Defendant.

28. This evidence indicates that the factor concerning the degree of control exercised by the purported employer favors a finding of employee status in this case.

29. **Extent of the Relative Investments of the Nurses and the Defendant**. In applying the relative-investment factor, courts compare each worker's individual investment to that of the alleged employer. *See Hopkins*, 545 F.3d at 344. While the Plaintiff and the Class Members used their own vehicles to drive to the medical facilities, that is of little import, because they were their

own personal vehicles, not vehicles they had to purchase specifically to be a nurse for Defendant. *See Herman*, 161 F.3d at 304 ("Although the driver's investment of a vehicle is no small matter, that investment is somewhat diluted when one considers that the vehicle is also used by most drivers for personal purposes."). Similarly, while the Plaintiff and the Class Members used their own tools (e.g., shoes), they were mostly common tools that most Members of the Class probably already had before they entered any relationship with Defendant. *See Mr. W Fireworks*, 814 F.2d at 1051 ("One operator testified that he used a computer to assist him while working at the stand, but this involved no investment because he originally had purchased the home computer for school work."). Even if they did not have the tools already, they cost a trivial sum of money to purchase, which is far less than Defendant's relative investment. *See infra*.

30. Defendant invested significantly in Plaintiff and Class Members. For example, maintaining an office in Texas, dispatching services, and developing and marketing its service offerings — outweighs the personal investment of any one nurse. As such, Defendant's greater overall investment in the business scheme clearly indicates that the relative-investment factor weighs in favor of employee status. *See Hopkins*, 545 F.3d at 344 (finding this factor weighed in favor of employee status based on same analysis).

31. **The Degree to Which the Worker's Opportunity for Profit or Loss Is Determined by Defendant**. In *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308 (11th Cir. 2013), the court framed the opportunity for profit or loss factor as one "consider[ing] the alleged employee's opportunity for profit or loss depending upon his managerial skill." *Id*. at 1317. The court stated that "[a]n individual's ability to earn more by being more technically proficient is unrelated to an individual's ability to earn or lose profit via his managerial skill, and it does not indicate that he operates his own business." *Id*. Here, Plaintiff and the Class Members were

entirely dependent on Defendant to send them on jobs in order to earn a wage. Thus, it was only through Defendant that Plaintiff and the Class Members obtained any profit.

32. Further, as noted above, Plaintiff and the Class Members were barred from soliciting customers or even prospective customers to do business with themselves directly, or for some other entity they worked for. As such, the Plaintiff and the Class Members were, for all intents and purposes, entirely dependent on Defendant's dispatch to send them on jobs to make money. They had no other way to make a profit. As such, Defendant determined the Plaintiff and the Class Members' opportunity for profit and loss, and this factor militates towards employment status, rather than independent contractor status. *Hopkins*, 545 F.3d at 346 (plaintiffs were employees when they were not allowed to work for other companies or themselves).

33. Finally, as to this point, the Plaintiff and the Class Members regularly worked 60 to 70 hours per week, or more. As such, as a practical matter, they could not even work a side job in an unrelated industry to earn extra money. Consequently, this factor too favors a finding of employee status, rather than independent contractor status. *See Cromwell v. Driftwood Elec. Contractors, Inc.*, 348 Fed. Appx. 57, 61 (5th Cir. 2009) (factor related to opportunity for profit or loss weighed in favor of employment status where employees' required schedule "had the effect of severely limiting any opportunity for profit or loss" by "preclud[ing] significant extra work.")

34. **The Skill and Initiative Required in Performing the Job**. This factor considers whether the worker exhibits the type of skill and initiative typically indicative of independent-contractor status. *See Pilgrim Equip.*, 527 F.2d at 1314 ("Routine work which requires industry and efficiency is not indicative of independence and nonemployee status."). Generally, courts in this circuit look for some unique skill set, *see Carrell*, 998 F.2d at 333 (noting that "[p]ipe welding, unlike other types of welding, requires specialized skills"), or some ability to exercise significant

initiative within the business, *see Hickey v. Arkla Industries, Inc.,* 699 F.2d 748, 752 (5th Cir. 1983) (noting that the plaintiff-salesman controlled "major components" of the business open to initiative, including advertising, marketing, and the choice of other products to sell). Here, Defendant hired nurses (RN's, LVN's etc.) with no preference for vocational training or experience because the nurses were hired to work on routine jobs at medical facilities. Furthermore, the nurses did not control major components of the business. Any specialized work was to be performed by doctors and other medical specialist at a medical facility. The nurses were there to assist with routine side work associated with medical care. Indeed, Defendant, when recruiting nurses, represented that that there is no experience necessary. As such, this factor too favors a finding of employee status, over independent contractor status.

35. **The Permanency of the Relationship**. In *Herman*, the Fifth Circuit found that the permanency factor pointed toward independent contractor status when "[t]he majority of drivers work for Express for a short period of time. Drivers are able to work for other courier delivery companies, and the 'Independent Contractor Agreement' does not contain a covenant-not-to-compete." 161 F.3d at 305.

36. The facts of this case are in stark contrast to *Herman*. Here, Plaintiff worked for Defendant for approximately sixteen (16) years. Like Plaintiff, many of the nurses worked for Defendant for more than a year, and the nurses are barred from working for any other nurse staffing company. As such the facts of this case are the opposite of *Herman* as to this factor, and thus this factor militated towards employee status, rather than independent contractor status.

37. Moreover, the nurses are not hired on a project by project, or job by job basis. Nor did they regularly work for a while for Defendant, then leave, and return to work for Defendant again. Rather, they were hired and worked on "evergreen" status like any other normal employee

would work. This further supports a finding of employee, rather than independent contractor, status. *See Cromwell*, 348 Fed. Appx. at 61 (permanency factor weighed in favor of employment status where splicers "did not have [a] temporary, project-by-project, on-again-off-again relationship with their purported employers").

38. The bottom line is this: As a matter of economic reality, the Plaintiff and the Class Members were not in business for themselves. That is dispositive. They were employees, not independent contractors. *See Cromwell*, 348 Fed. Appx. at 61 (finding plaintiffs were employees, not independent contractors, as a matter of law, stating: "Although there are facts that clearly weigh in favor of independent contractor status, notably that Cromwell and Bankston controlled the details of how they performed their work, were not closely supervised, invested a relatively substantial amount in their trucks, equipment, and tools, and used a high level of skill in performing their work, these facts are not sufficient to establish, as a matter of economic reality, that Cromwell and Bankston were in business for themselves during the relevant time period.) (Footnote omitted).

## FLSA CLAIMS FOR OVERTIME PAY FOR PLAINTIFF & A CLASS OF SIMILARLY SITUATED WORKERS

39. Under the FLSA, employers such as Defendant are generally required to pay hourly paid employees like Plaintiff time and one-half their regular rate for all hours worked over 40 in a workweek. *See* 29 U.S.C. § 207(a)(1). As the Fifth Circuit has stated: "The Fair Labor Standards Act generally requires that employees be paid an overtime premium of "time-and-one-half" for all hours worked in excess of forty hours in a week." *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 633 (5th Cir. 2001) (citing 29 U.S.C. § 207(a)).

40. There are some exceptions to this rule (for example, for "computer professionals" as defined by the FLSA and its interpretive regulations), but none of them applied to Plaintiff, or any of the similarly situated nurses. Thus, for every hour Plaintiff and the Class Members worked

over 40 in a workweek, Defendant was required by the FLSA to pay them an additional overtime premium. Defendant, however, failed to do that. Thus, Defendant violated the FLSA rights of Plaintiff and the Class Members, and owes them the overtime premium that Defendant should have paid pursuant to the FLSA, and that Plaintiff and the Class Members were entitled to receive pursuant to the law.

41. In addition, Defendant owes Plaintiff and the Class Members an equal amount in liquidated damages. This is so because, under the FLSA, an employer who violates the overtime provisions is liable not only for the unpaid overtime compensation, but also for "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). While an employer may try to avoid liquidated damages by showing its FLSA violation was in "good faith," that is an extremely difficult burden to satisfy. As the Fifth Circuit has put it, "[a]n employer 'faces a 'substantial burden' of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA.'" *Singer v. City of Waco*, 324 F.3d 813, 823 (5th Cir. 2003) (quoting *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir. 1998)).

42. For example, in *Bolick v. Mgmt. by Skylane, LLC*, the court considered whether the Defendants had produced sufficient evidence to support a § 260 good faith defense. Civ. A. No. H-07-2261, 2008 WL 4589961 (S.D. Tex. Oct.14, 2008) (Smith, J). The Defendant produced evidence that an executive was not aware of FLSA requirements, sought legal counsel when it created payroll policies, and "always clearly notified its exempt employees that they were paid a specified weekly wage for all hours worked in each workweek, regardless of the number of hours worked." *Id*. at *1. The executive also testified that the Defendants "has always endeavored to comply with the terms of all applicable state and federal laws, including the [FLSA]." *Id*. The court still found that the Defendant had failed to produce sufficient evidence to withstand summary

judgment because there was "no evidence of any specific ongoing efforts by Defendant to comply with the FLSA." *Id*.

43. Defendant has no evidence remotely as strong as the employer in *Bolick* that its violation of the FLSA's basic "time and one-half" overtime rule was in "good faith." The fact is that the rule Defendant violated is so basic that it could not have been in "good faith." *See also Riddle v. Tex-Fin, Inc.*, Civil Action No. H–08–31212011, WL 1103033, at *4 (S.D. Tex. Mar. 22, 2011) (awarding liquidated damages in FLSA case even where the jury did not find the violation to be willful); *Tran v. Thai*, NO. CIV.A. H-08-3650, 2010 WL 5232944, at *6 (S.D. Tex. Dec. 16, 2010), (granting summary judgment for the plaintiff in an FLSA case on the question of "good faith," stating "though the Defendants conducted internet research once to determine whether a receptionist was covered by the FLSA and were unsure as to whether they had sufficient gross revenue to be an employer under the FLSA, the Defendants have identified no evidence of any specific and ongoing efforts to comply with the FLSA. The plaintiffs are entitled to summary judgment on this defense.").

44. All conditions precedent, if any, to this suit, have been fulfilled.

45. At all material times, Plaintiff was an employee of Defendant under the FLSA. 29 U.S.C. § 203(e).

46. At all material times, the Class Members were employees of Defendant under the FLSA. 29 U.S.C. § 203(e).

47. At all material times, Defendant was and a covered employer under the FLSA. 29 U.S.C. § 203(d).

48. At all material times, Plaintiff and the Class Members routinely worked in excess of 40 hours per seven-day workweek, and Defendant had knowledge of that.

49. At all material times, Plaintiff and the Class Members were and are entitled to overtime compensation for hours worked over 40 in a seven-day workweek. 29 U.S.C. § 207(a)(1).

50. At all material times, Defendant failed to pay Plaintiff and the Class Members overtime compensation of one and one-half their regular hour rate of pay for hours worked over 40 in a seven-day workweek.

51. Defendant's violations of the FLSA was willful within the meaning of 29 U.S.C. § 255(a). *See Singer v. City of Waco*, 324 F.3d 813, 821-22 (5th Cir. 2003) (upholding a jury finding of willfulness).

52. Defendant did not and have not made a good faith effort to comply with the requirements of 29 U.S.C. § 260.

53. Where, as here, "the employers' actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis." *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007).

54. Accordingly, Plaintiff seeks to represent a class under 29 U.S.C. § 216(b) on behalf of:

> **All current and former hourly paid nurses classified as independent contractors who performed work for Defendant at any time during the three-year period preceding the date the Court certifies this case as a Section 216(b) collective action to the present.**

## JURY DEMAND

55. Plaintiff demands a jury trial.

## DAMAGES AND PRAYER

Plaintiff asks that the Court issue citation for Defendant to appear and answer, and that Plaintiff and the Class Members be awarded a judgment against Defendant for the following:

    a. Actual damages in the amount of unpaid overtime wages;

    b.    Liquidated damages under the FLSA;

    c.    Prejudgment and post-judgment interest;

    d.    Court costs;

    e.    Reasonable attorneys' fees and costs; and

    f.    All other relief to which they are justly entitled in equity or under the law.

Respectfully submitted,

SHELLIST | LAZARZ | SLOBIN LLP

By: */s/ Todd Slobin*
Todd Slobin
Texas Bar No. 24002953
tslobin@eeoc.net
Ricardo J. Prieto
Texas Bar No. 24062947
rprieto@eeoc.net
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993

ATTORNEYS FOR PLAINTIFF &
CLASS MEMBERS